Good morning, Your Honors. I'm Scott McMillan. I represent Lycurgan, Inc. Joining us today is my client, Dimitri Karas. He's in the gallery. The first case that I'm going to present on is the order that was sealing, maintaining the seal of the warrant executed in March of 2014 against Lycurgan's premises. Well, it isn't quite maintaining the seal. Maintain the seal as to certain portions thereof, correct? Correct, Your Honor. All right. I just wanted to make sure we weren't overstating what we got here. Go ahead. As the Court's familiar, after Lycurgan moved to have the warrant unsealed, brought an independent action, and engaged in some litigation in the District Court, and made an appearance, the District Court pointed out that there needed to be a further demonstration and articulation of the reasons for good cause. Because it is a strict scrutiny test whether a matter should remain sealed. What's a strict scrutiny test? That there's a compelling state interest in – I don't want to mess this up. It's that there's a compelling interest – okay, here it is. The presumption favoring disclosure can be overcome only if sealing serves a compelling interest. There's a substantial probability that in the absence of sealing, this compelling interest would be harmed, and that there are no alternatives to sealing that would adequately protect the compelling interest. And what are you quoting there, counsel? I am quoting from – this is Seattle Times Company versus U.S. District Court from Western Washington. This is a District Court case. There's no appellate court case on this issue, except one – Kamakana versus City and County of Honolulu, right? And that one says the opposite. The Kamakana case – yes, Your Honor, the Kamakana case – the case I was quoting from was decided under the public interest, the press interest, and actually that was in search of Google email accounts, and it was citing the Seattle Times in that line of cases. Your Honor, the Kamakana case, to some extent, appears to have been overruled, or parts of it have been overruled in Center 4, Auto Safety versus Chrysler, LLC. That's 809 F3rd 1092. And what circuit is that? Ninth Circuit, Your Honor. Okay, and so you're saying that one of our panels, three-judge panel, overruled another three-judge panel? How can that be under Miller versus GAMI? Well, I don't – the Lexis site is that it's questioned, and the site that I read from said that it's overruled in part or questionable. So I may be incorrect on that, Your Honor, and I don't want to – I guess what I'm concerned about, counsel, is here we have a case where you've asked to have the affidavit unsealed. All of the information has now been unsealed except for the names of the agents involved. You have a situation where allegedly your client had targets, if you will, of the images of some of these agents. You put their names up on a website. You ordered pizza to be delivered to the man's house, and you had a bunch of people standing around. Highly threatening, wouldn't you say? Your Honor, I don't believe that the facts as recited are entirely accurate. Okay, straighten me out. Tell me what's accurate. Sure. What did happen? What did happen is at the time of the raid, one of the agents was standing out in the street with his badge, smacking his gum, and one of the employees took a picture, and they put it into a large cutout that you see. Like on a target range, right? Well, there was no target. No, I understand, but they were like cutouts on a target range. It wasn't a cutout on a target range. Like a cutout on a target range. Your Honor, a cutout on a target range does not have a bubble where quotations can be placed with words for the person to say. But it was a similar size as a cutout of a human being that you would find at a target range. I don't believe it was a similar size, and it certainly didn't. What was the size of this cutout? Well, it was a life-size cutout. And that's what you have at a target range, because when you're at a target range, you want to shoot at life-size stuff. Your Honor, I've never seen a life-size full-color target at a shooting range. I'm not talking about the color. I'm talking about the size. Your Honor, I don't believe that there's anything in the record that reflects that. I mean, that's an inference that is being drawn. Is it a wrong inference? I do believe it is a wrong inference. Have you ever been to a target range? Been to many target ranges. And do they ever have cutouts of human beings? They might have silhouettes. Yes, and how big are those silhouettes? Well, usually the silhouettes are torso-size, three or four pages. Are they life-size, or are they smaller, or are they bigger? Well, they're three or four. You know, they're the life-size of a torso. Right, and this cutout of the ATF agent was life-size, right? The entire body. Right. So if you're matching up the torsos, they were the same size. Sure. And if you didn't have the picture of the ATF agent on the one that your client did, and it was just a silhouette, it would be very similar to what you would see at a target range. I would disagree with that because the target range, everything that I've ever seen in a target range or a silhouette like that has been different. And this target range silhouettes do not have a bubble for statements to be made and a crayon to be hanging from them so you could put up little words in the bubble. Well, let's go to the next thing. What about the listing of the folks' information on a website? Did you deny that? Yes. Okay, what happened then? I don't know where that came from. There was discussions about the names of the people that were representing the parties on a blog, and it wasn't operated by Likergan. It had nothing to do with Likergan, and that is actually in the record. That was taken from the news source, and it was commentary from other members of the public discussing what these judges or what these attorneys, what they were arguing. And there was no addresses associated with them. Okay, what about the pizza? Now, the pizza, Mr. Karas or Likergan did send some anchovy pizzas over to the headquarters as a friendly gesture. I'm sure it was friendly, and there were lots of Likergan employees standing outside, right? I don't believe so. When the pizza was delivered? I don't know about that. The record says that. I don't know whether it's true or not. I'm just asking you. I'm not familiar with that statement. I do know that there was a pizza delivery man who delivered pizzas and was treated not as somebody who was bringing food but as somebody who was a threat, and it was certainly taken out of context. Do you think it was a reasonable thing for the agent to think it was a threat? No, I don't think it. I don't think it was a reasonable thing. It doesn't just really get down to whether the district judge had reason to believe, based upon the cutout that we've discussed and the pizza put aside the other, that the names of the agents involved were important to keep protected simply because there was a threat against them. Is that a reasonable assumption for the district court to make under an abuse of discretion standard? I don't believe that that was a reasonable suggestion because the First Amendment, there was no threat. On a First Amendment case, counsel, you're not a press person. We're talking about a criminal case where certain things were seized and certain threats were allegedly made against federal agents here. This is not a press case. The question is whether the district judge in this case abused her discretion in saying, you can have all this information in here, but the names of the agents we're going to keep redacted for now because we think there's a threat. What's wrong with that? Well, abuse of discretion was outside the bounds of reason in light of the nature of what the statements were. So that's your idea of a good time, but if one takes the opposite approach, which is the approach taken by the government, and the district court's got to make a determination, and you agree it's an abuse of discretion review, correct? I do not agree that it's abuse of discretion review. Well, can you give me the case that says it isn't an abuse of discretion review to discern whether you retained something filed under seal? The case that – I mean, I didn't see even in your brief that you challenged the ability of the court to put the affidavits under seal. Then whether they're released from the seal or whether they're not, retaining the filings under seal is abuse of discretion. That's Shryrock. Well, at some point, though, in the cases that are cited in the brief and the cases that were acknowledged by the government, the reasons, the rationale for maintaining the identities under seal diminishes. Well, but all I'm trying to do is get you to answer my question, not go off onto some other argument. I'm trying to say, okay, I'm trying to give you credit for what you say. I'm trying to do what you got to do, but then it comes to the decision. The district court's got to make a decision. Had in its mind the exact evidence that my colleagues have been questioning you about, had in its mind all of the cases that you've told me about, at that point they have to make a decision, and it's a discretionary decision. And I cannot undo that discretion unless it's without foundation. I'm having a tough time understanding that. I'm just trying to make sure you agree it's abuse of discretion because you didn't cite me any case to the opposite. For the temporary maintaining under seal, I would concede that it's abuse of discretion. Let's go a little further. Why isn't this moot? Were you the guy that argued this in the trial court? I was. And didn't you request that the search warrant documents be disclosed in their entirety or alternatively that the government disclose a limited redaction version of the documents? That's correct. And isn't that exactly what the court did? It didn't take your alternative request. And when you requested in the alternative, why is this not moot?  Why isn't it moot? Once you requested an alternative and the court took it. Counsel, it's awful. I remember being in your shoes. Of course. I remember being down there in the trial and making these kind of requests one way or another. I was always representing somebody who was being accused of something very terrible, and they were suing them for malpractice or something else. But when I gave an alternative to the court and the court took it, I was pretty stuck. And I'm understanding why are you not stuck? Because of the passage of time has eliminated the reasons for maintaining it under seal. Well, just a minute. Why the passage of time is not as eliminated. If you allowed that to be the case and they took it, then you've got to say not capable of repetition but capable of review. I have to look at that. Or I have to talk about voluntary cessation does not apply or whatever. But I can't find any of those exceptions either. Otherwise, it's moot. With respect to the mootness, we raised that again. We did not have an opportunity to do further briefing after the court, after this was submitted. It simply came down with the court dismissing after the government acknowledged that there had been a release of the partial affidavit. And that's why we brought that up. Did you make a motion? We did. Did you do anything to try to object to what the district court did? Yes, I believe it's there in the record. Again, I looked through the record, and I'm trying to see what you did because it seems to me that I could avoid all of this by saying they gave them what they wanted. The record, I believe, reflects that we made an additional motion, and we sought that request. I believe there's a new trial motion in there. I believe I made new trial motions on both. In the heat of the moment, my brain is going blank as to specifics of my procedure in the lower court. I'll have that happen. We understand that. But what we need to understand here, though, is our current situation. And I join my colleague in wondering, at this point, on what basis can you proceed forward? You've got what you requested in your alternative. The only issue open is the issue of the disclosure of the names. Not sure why you even need those at this point, but the reality is the district judge determined there was a danger. Not going to change that. It's not an abuse of discretion, is it? I believe, based on the record that was objected to, there is we did make our objections to the- I know you made your objections. I'm just saying that's not an abuse of discretion by the district judge to have reviewed the record based on what each of us has pointed out, in terms of the cutout, in terms of the pizza and the people standing out there and so on, made a determination that that was a threat. And under the circumstances, the prudent thing to do was to keep the names there. You seem to have agreed with that, as my colleague has pointed out. Why is this not moved? What else could you get other than what you asked for? Well, I do believe that we renewed it and requested the entirety of the unredacted. That is in the record, I believe. You're going to find that. It is there. And the reason that, Your Honor, you asked why we need it, and we had also requested judicial notice of the first case that had been filed, the case where the temporary restraining order was requested in March of 2014, which was granted. And that case is still pending. It's been amended. And there is a Bivens action now based on the misstatements, the lies that were stated, the conflation of the Gun Control Act and its definition of a firearm. See, this is at the very- That's a different case, right? We're going to go to the second case. I know you're talking about, yeah, the third case. But let's get to that in another case. I think your time is used now. So we'll hear from the government, and then we can proceed with the second case. Thank you, Your Honor. Thank you very much. Good morning. May it please the Court, Daniel Zip on behalf of the Respondent. Your Honors, in June of 2014, the plaintiff moved for the Court to unseal the search warrant affidavit or, in the alternative, for a limited redacted version of the search warrant documents. And that was the motion to unseal, right? Yes, Your Honor. And in response, the United States provided the plaintiff with essentially what he was asking for, which was a limited redacted version of the search warrant. As a result, there's no live case or controversy for this Court to review, and the appeal should be denied as moot. Have the names of the agents been disclosed in Ares 1 in the Bivens case? They have not, Your Honor. Has the plaintiff issued written discovery or taken depositions directed at identifying the agents? Interestingly, Your Honor, last night the plaintiff filed a motion with the District Court in Ares 1 for emergency discovery of the names at issue in this appeal. So that's where it lies in that case. But he has not yet received them, but is essentially working on it. The only potential issue that is even conceivably not moot would be the question of whether the redactions went too far, whether they were different than what the defendant wanted. He did file a motion for a new trial about a week after the Court dismissed it as moot. But as Your Honors discussed, that decision is reviewed for abuse of discretion, and there's no question that the District Court's conclusions were not implausible or illogical, given the various pizza websites and other potential threats against the agents. I want to find out more about the website. I read what I thought was in the record. Your opposing counsel suggests that the website information was not placed there by a leturgian or anybody related to it, like Kurgan, excuse me. What's your response to that? That's correct, Your Honor. I think at the first hearing the parties discussed essentially the Internet coverage of the raid. It wasn't specifically like Kurgan posting those on the Internet. It was more sort of the Internet stir that had been caused by this. And on certain blogs, again, not related to like Kurgan, there were specific listings of the prosecutor and the judge's name. And as a result, at ER 73, a plaintiff even filed a declaration outlining his efforts to contact those blogs and have them essentially take down the information about his case because it was harming his efforts. Could the District Judge in her discretion have taken into account the existence of the blog information, even if it wasn't put there by like Kurgan, in terms of her analysis of whether there was a threat to these agents? Could the District Court have gone online? No, no. What I mean is the District Court had before her the cutout, the pizza incident, and knew that there was information online. We now know, I know now, that it was not placed there by like Kurgan. But could she have taken what a third party placed online into account in determining whether there was a threat to the agents? Yes, Your Honor. In terms of the atmosphere, the environment in which this occurred. Yes. The finding she made was that the sealing was necessary to protect not just the safety but the privacy of the agents. And that finding necessarily depends on the overall Internet coverage of the individual's specific names involved in the first hearing. So that alone, but in combination with the pizza incident and the cutout, this was certainly a plausible decision for the District Court to order the name sealed. Let me ask you a couple of questions. I think you've answered them, but they were in my mind as I came down here. It's my understanding that they were having a hearing on the motion to unseal, and the government put an affidavit in that said we're going to unseal in the future. And so, frankly, they put off the hearing, is my understanding. And then the government gave them a copy of the affidavit with the officers' names removed, right? Correct. At that point, then, we had another hearing, and it was on August 21st, and the District Court denied the motion, said it was moot because they got what they wanted, at least one of the alternatives. The thing that some worry to me, and I guess I don't understand, they filed something called a motion for new trial. As I understand it, this was just a motion for reconsideration of the District Court's denial? Yes, Your Honor. I think my understanding is that there was only one hearing that the parties filed briefing. The court held a hearing, said I'm taking this all under submission, and ordered supplemental briefing. A few weeks later, the United States then turned over the search warrant with the redactions. The court then issued an order that the entire thing was moot, and then about a week after that is when the motion for new trial was filed. But what they were really seeking in this new trial was just reconsideration of the District Court's decision on the motion to unseal? Yes. They were essentially moving the goalposts and now trying to argue that the redactions were not enough. Understood. And then the court denied that in another written order. And then wanted attorney's fees as well. Correct, Your Honor. The court had never awarded them anything. There was never a judgment, never a consent decree, never a settlement agreement. We've got all the stuff, and all the procedural stuff is right now in front of me. I've asked for all of it. If there's anything else I need to know about, I just wanted you to tell me. No, Your Honor. There was no final judgment, and it's our position that the catalyst theory that they're relying on has been directly overruled by the Supreme Court. And in any event, the United States' position in sealing the affidavits was substantially justified, even if there had been an order. Happy to answer any questions. I was wondering if you could give your thoughts on counsel's argument that the sending of the pizza was a friendly gesture of some sort. That doesn't... In the context of a company that manufactures un-serialized AR-15s and was engaged in bitter litigation with the ATF, the idea that after a search warrant, sending a pizza to a specific name of an agent involved in the search was done in good fun, I think is not a reasonable interpretation. And I think the district court was certainly within its discretion in treating it as a potential threat. Unless the court has any further questions. I don't believe so. Thank you, counsel. So we thank both of you on this first case. The first case is submitted.
judges: M. Smith, N.R. Smith, Feinerman